## LEE *v.* MEMPHIS PUB. CO.

(In Banc.   June 14, 1943.   Suggestion of Error Overruled Sept. 27, 1943.)

[14 So. (2d) 351.   No. 35376.]

James Stone & Sons, of Oxford, and A. F. McKeigney, of Eupora, for appellant.

**Cowles Horton**, of Grenada, and **Fitzhugh, Murrah & Fitzhugh**, of Memphis, Tenn., for appellee.

268

James **Stone & Sons**, of Oxford, and **A. F. McKeigney,** of Eupora, for appellant, in rebuttal.

272

Argued orally by **Phil Stone**, for appellant, and by **Cowles Horton** and **Millsaps Fitzhugh**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This suit is brought by the appellant, Ned Lee, a resident citizen of Webster County, Mississippi, against the appellee, Memphis Publishing Company, a Delaware corporation, publisher of the Commercial Appeal, a daily newspaper, printed and published at Memphis, Tennessee, in an action for damages growing out of the publication and circulation of an alleged defamatory and libelous article sent to it for publication of and concerning him. The suit was instituted in the circuit court of Webster County and process was attempted to be had upon the said foreign corporation by serving the same upon two local citizens, Bays Land and William Dunlap, and also upon Walker Wood, Secretary of State at Jackson, Mississippi, pursuant to Chapter 246, Laws of Mississippi of 1940, which provides, among other things, that all civil actions for recovery of damages brought against a nonresident of the State of Mississippi may be commenced in any county in which the action accrued, and that service of process may be had in any county of the State where the defendant, or any of them, may be found. Neither of the two local residents in Webster County were charged with wrong doing, nor made defendant, and it appears from the proof introduced under a plea to the jurisdiction of the court that the said Bays Land was an independent contractor who operated a truck or trucks in bringing the newspapers from Memphis into Mississippi for delivery to one J. F. Wofford, a local distributor, who purchased at the wholesale price such a number of the copies of the Commercial Appeal as he deemed necessary to meet his requirements as such distributor, and who was obligated to pay such wholesale price therefor and to resell them on his own account to news boys, news stands and individual purchasers in the Town

of Eupora in that county, using every reasonable effort to increase the number of retail purchasers of the paper in said town; that the said William Dunlap was employed by the defendant at a salary of $35 per week as a contact man to ascertain and recommend suitable persons to become local distributors of the paper, subject to the approval of the Memphis Office in Tennessee, accept applications in that behalf and performance bonds from such persons for approval at the office aforesaid, in the territory east of the I. C. R. R. Company and comprising more than one-half of the State of Mississippi, and he testified that as such employee he was the supervisor of such local distributors, but without authority or discretion to make any contract or to otherwise obligate his said employer in the premises; and it was also shown that the defendant maintains a news office at the Edwards Hotel at Jackson, Mississippi, on the door of which a sign is printed, reading: "The Commercial Appeal—Mississippi Office—News—Circulation—Advertising," where Kenneth Toler is in charge as a reporter for the Commercial Appeal, who prepares and sends to the Memphis Office news articles for acceptance or rejection there, and whose office rent and salary are paid by the defendant, but who was shown not to be engaged in selling newspapers, soliciting advertisements therefor or vested with any authority to act for the defendant in the negotiation of any contract or other business transaction. That such advertising carried by the defendant in its newspaper from Mississippi was wholly unsolicited items sent in by individuals who desired such service.

The said Chapter 246, Laws of 1940, supra, provides that: "Any non-resident, . . . or any corporation not qualified under the constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state, shall, by the doing of such business or the performing of such work or services, be deemed to have appointed the secretary of state, or his successor, or successors in office,

to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action, accrued or accruing from the doing of such business or the performing of such work or service, or as an incident thereto by any such non-resident, or his, their or its agent, servant or employee. The doing of such business or the engaging in any such work or service in this state shall be deemed a signification of such non-resident's agreement, and equivalent to an appointment by, such non-resident of the secretary of state of the state of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident upon whom may be served all lawful process in any action or proceeding against any such non-resident for any cause of action which has accrued or may accrue in this state.'' Section 1.

The defendant entered its appearance especially for the purpose of moving to dismiss the suit for want of jurisdiction, which action on its part did not operate as a personal appearance so as to subject it to the territorial jurisdiction of the court, as was held in the case of First National Bank of St. Louis v. Mississippi Cottonseed Products Company, 171 Miss. 282, 157 So. 349. By its plea, the defendant raised (1) the question of want of territorial jurisdiction of the courts of Mississippi on the ground that it was not doing business in the state, and (2) the want of venue of the suit in Webster County, in the event that it should be held that service of process upon the Secretary of State under the foregoing statute could render it subject to suit in this State. The trial court was of the opinion that the defendant was doing business in Mississippi but that the venue of the suit is in Hinds County where the Secretary of State resides, and in the absence of a motion by the plaintiff to transfer the suit the same was dismissed, and the plaintiff appeals.

It is urged by the appellant that the only question to be considered by this court is that of venue. That the defendant has not filed a cross-appeal from the decision

of the trial court in holding that the said Memphis Publishing Company was doing business in this state, and that said defendant is therefore bound by the judgment of the trial court on that issue. We are unable to agree with this contention for the reason that if the judgment of dismissal was correct on any ground raised by the plea, the same will be affirmed; Yazoo & M. V. R. Company v. Adams, 81 Miss. 90, 32 So. 937; Carr et al. v. Miller, 162 Miss. 760, 139 So. 851; 4 C. J. 662; 5 C. J. S., Appeal and Error, sec. 1464, holding that the appellate court may base its affirmance or reversal on a different legal theory or on different grounds than that upon which it was decided by the trial court, provided the question was before such court under the pleadings when its judgment was rendered.

We therefore proceed to a decision of the question of whether or not the defendant is doing business in this state so as to be amenable to the process of its courts, since an adjudication of that issue in the negative will render unnecessary a consideration of any other question involved.

The general rule deducible from the decisions of the Supreme Court of the United States on this question is that to constitute a foreign corporation doing business in a particular jurisdiction, the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state where the service of process is attempted. Philadelphia, etc., R. Company v. McKiddin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710; St. Louis S. W. R. Company v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; People's Tobacco Company v. American Tobacco Company, 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; and Green v. Chicago, etc., R. Company, 205 U. S. 530, 27 S. Ct. 595, 596, 51 L Ed. 916. In the case of Green v. Chicago, etc., R. Company, supra, where the railroad company's line

extended from Chicago westward and where it maintained an office in Pennsylvania where a district freight and passenger agent and several other employees who solicited passenger and freight business were employed, it was held that while it was "obvious that the defendant was doing [in Pennsylvania] a considerable business of a certain kind" it was nothing more than that of solicitation and that the railroad company was not doing business in Pennsylvania in such sense as to render it amenable to the process of the courts in that state.

Our own court held in the case of Item Company, Ltd., v. Shipp et al., 140 Miss. 699, 106 So. 437, that the Item Company, Ltd., a publisher of a New Orleans newspaper, was not doing business in this state, so as to require the filing of a copy of its charter under Chapter 92, Laws of 1916, and wherein it was shown that the defendant Shipp, a local distributor of the newspaper at Hattiesburg, Mississippi, purchased from the Item Company, Ltd., such number of copies of the paper as he deemed necessary for his requirements as such local distributor and was obligated to pay for the papers whether he sold them or not, and when he sold them, whether he collected for them or not, and in which case the publishing company also had a traveling representative who visited the various towns in this state and solicited additional subscribers for the paper, turning the list over to the local distributors in each case, and occasionally made sales of such newspaper. The local distributor Shipp and the sureties on his performance bond were sued for a balance alleged to be due on his account and the defense was that the plaintiff was doing business in this state without having obtained a license therefor and therefore could not maintain the suit. This court held otherwise, and we are of the opinion that the decision is authority in support of the contention that the defendant in the case at bar is not doing business in Mississippi insofar as Bays Land and William Dunlap, the local residents in

Webster County, are concerned. Compare Williams v. Bruce's Juices, D. C., 35 F. Supp. 847.

This brings us to the question of whether or not the maintenance of the Jackson Office under the supervision of Kenneth Toler under the circumstances hereinbefore mentioned should serve to distinguish the present case from that of Item Company, Ltd., v. Shipp et al., supra, the New Orleans newspaper not having maintained an office in this state in that case.

In the case of Layne v. Tribune Company, 63 App. D. C. 213, 71 F. (2d) 223, decided by the Court of Appeals of the District of Columbia, and wherein certiorari was denied in 293 U. S. 572, 55 S. Ct. 83, 79 L. Ed. 670, it was held that where the defendant, Tribune Company, an Illinois corporation, engaged in publishing the Chicago Daily Tribune and the Chicago Sunday Tribune at Chicago, Illinois, was not doing business in the District of Columbia, although its papers were circulated extensively throughout the country, and certainly in the City of Washington, where process was served on Arthur S. Henning, an employee of defendant company, in charge of the collection of news items in the City of Washington, and the forwarding of them to the Tribune Office in Chicago. In that case, the defendant company not only maintained an office in Washington, in charge of Henning, but there were three other reporters and two telegraph operators employed in that office. The defendant maintained a leased telegraph wire between Washington and Chicago, its home office. The news articles were examined at Chicago and used or discarded by the defendant and supplied to other newspapers. It was also shown that the defendant maintained a telephone in the Washington Office, and "Henning had authority to purchase supplies for the office; employ, when business required, additional telegraph operators; all of which items were put in his expense account, which was paid from the Chicago office. Henning's and the other employees' salaries were paid directly from the Chicago

office. The rent and furnishings of the office in Washington were paid for directly from the Chicago office. It also appeared that defendant company made no contracts of any nature in the District of Columbia, and no money was received by any of the employees here for contracts entered into by defendant, or for the sale of defendant's papers here, or for advertising. No employee of defendant was authorized to enter into any contract with any other corporation outside of the state of Illinois. On this statement of facts, the court below held that defendant company was not doing business in the District of Columbia within the terms of the statute and could not be held subject to service of process here. We think the decision of the court was right. . . . Green v. Chicago, B. & Q. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, and supported by St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 227, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; International Harvester Co. v. Kentucky, 234 U. S. 579, 583, 34 S. Ct. 944, 58 L. Ed. 1479; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710.''

We are unable to distinguish the facts in the case at bar insofar as the maintenance of the Jackson Office in charge of Kenneth Toler is concerned from the facts in the case of Layne v. Tribune Company, supra. In that case, Title 24, Section 373 of the District Code 1929, among other things provided: ''In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court,''—a statute designed to subject a foreign corporation doing business in the District of Columbia to suit, and in accordance with the same purposes sought to be

accomplished by Chapter 246, Laws of Mississippi 1940, supra, even though the two statutes are different from that involved in the case of Item Company, Ltd., v. Shipp et al., supra.

It was also held in the case of Lauricella v. Evening News Pub. Co. (D. C.), 15 F. Supp. 671, that a newspaper located in a foreign state, maintaining advertising salesman and staff within state to solicit orders for display advertising subject to approval of manager at home office at which all bills were handled, where salesman could neither employ, discharge, nor fix compensation of his staff, was not "doing business" within state so as to authorize service of summons upon salesman. See also Cannon v. Time, Inc. (4 Cir.), 115 F. (2d) 423; Merrimon v. Martindale-Hubbell, Inc. (D. C.), 36 F. Supp. 182.

We have carefully examined the decisions relied upon by the appellant, and we find that none of them hold the contrary to the decision in Layne v. Tribune Company, supra, under similar facts and circumstances. The case more nearly in point to the contrary is that of Acton v. Washington Times Co. (D. C. Md.), 9 F. Supp. 74, 76. In that case, the alleged libel was by one of the defendant's reporters located in the State of Maryland, and the District Court in that case followed the decisions of the state court in construing a Maryland statute in that behalf. It was held that since one of the functions of a newspaper is that of gathering news "If a foreign corporation sees fit to perform any one of these functions in a given jurisdiction, it necessarily follows that such performance raises the inference that the corporation is present and doing business within that jurisdiction." In response to that suggestion, it may be noted that in the case of Green v. Chicago, etc., Railroad Co., supra, the railroad company had its agent in Pennsylvania soliciting freight and passenger business, which is business essential to be obtained in the operation of a railroad, but it was held that the railroad company was not subject to the jurisdiction of the courts of Pennsylvania on the

ground that it was performing one of its essential functions in that state. At any rate, this decision of the Federal District Court, even though deemed persuasive, is not in our opinion controlling as against the other decisions hereinbefore cited.

Perfect candor constrains us to say that one's first reaction is adverse to the contention that the Commercial Appeal, with a daily circulation of approximately forty thousand copies of its papers in this state, is not doing business here, but after an examination of the reported cases and a consideration of the legal principles involved, we must hold that such contention is well taken, and that the defendant is not amenable to the service of process in this state; and that it would violate due process of law contrary to Section 1 of Article XIV of the Constitution of the United States to subject it to the jurisdiction of our courts unless its business here is of such nature and character as to warrant the inference that it has subjected itself to the local jurisdiction and is present within the state through duly authorized officers or agents within the sense of doing business as defined by the decisions in the Federal Supreme Court in its application of that constitutional provision.

The judgment of the court below in dismissing the suit must therefore be affirmed without regard to the fact that the judgment of dismissal was based on a different ground than that upon which we have reached our conclusion.

Affirmed.

**Roberds, J.**, delivered a dissenting opinion.

It is, to say the least, taxing the credulity of the ordinary mind to say that the Commercial Appeal is not "doing any business," or performing "any character of work or service" in Mississippi. It has what are called distributors in the various vicinities of the state, a part of whose contractual duties is to "Use every reasonable effort to retain all purchasers and to increase the number

of purchasers of The Commercial Appeal in the above town''; to sell and deliver the paper promptly to purchasers, newsboys and news-stands ''at the regular rates'' fixed by the paper; to furnish to the paper a complete list of such newsboys and news-stands, with their addresses, with dates to which subscriptions have been paid. These distributors execute bonds ''to well and truly perform each and every provision of the above agreement.'' It also has located in the State District Circulation Managers. The one in this record covers all the territory in the state east of the Illinois Central Railroad except a small ''corner'' in the northeastern part thereof. He is paid a salary by the paper. It is his duty to go about his territory and supervise the distributors. He recommends the employment and discharge of the distributors. His recommendation has never been rejected. He sees to it that the bonds of the distributors have sufficient sureties, in numbers and financial worth. The paper maintains and pays the rent of an office in Jackson, on which is printed the words ''The Commercial Appeal —Mississippi Office—News—Circulation—Advertising.'' In this office, it keeps a paid employee whose duty it is to gather state-wide news for the paper, and who analyzes and reports this news, with informative comments and conclusions thereon, for publication in the paper. Presumably and necessarily there are local news-gatherers throughout the state. It transports into the state, by bus, trucks and trains, and distributes to subscribers, some forty thousand daily papers. This is almost thirty percent of its total circulation. These not only carry the news and such articles as are usual in a large newspaper but also advertisements of the residents of this state. It receives from Mississippi nearly one-third of its total subscription revenue. Candor compels me to say that the majority holding appears to be supported by the greater number of adjudicated cases, but to say that the Commercial Appeal, under these circumstances, is not doing business or performing any character of work or

service in Mississippi is, in my view, to become lost in the tangled brambles of legal refinement.

Publication of a newspaper is a unique business. Its sole, ultimate object is to sell papers. That is its life-blood. Without patrons, it has no purpose and no means of existence from operation of the business. It gathers and sells news. It sells space for advertisements. The whole plan and effort are directed to procuring subscribers. Every act in this record is a link in that plan. Speaking of the functions of a newspaper, it is said in Acton v. Washington Times Company (D. C. Md.), 9 F. Supp. 74, 76: "They are are follows: First, the function of gathering news; second, the function of obtaining advertisers and subscribers as a source of revenue with which to edit, print, and sell in newspaper form both the news and the advertisements obtained; and, third, the actual printing and circulation of the newspapers for sale." The Commercial Appeal is performing in Mississippi each and all such functions save the actual printing of the paper.

The cases bearing upon this question are legion. They cannot be dealt with in detail, nor even listed, within the bounds of an opinion of reasonable length. From them, however, I think the following is a fair summary of the principles announced therein bearing on the question under consideration:

1. No rule can be announced applicable to all cases. The courts have not tried to announce such rule. Each case must depend upon its own facts and circumstances, all considered, in the light of the purpose and language of the statute involved, and the general principles governing the jurisdictional authority of the state over such corporations.

2. The object to which the question is directed will influence the conclusion. The question of the right to subject a foreign corporation to jurisdiction of the courts in the state through service of process is different from the power to impose conditions, restrictions and regula-

tions upon the right of the corporation to engage in activities in the state, and both are different from the right and power to tax such foreign corporation. The standards are not the same, and the quality, character, and quantity of the business conducted within the state by a foreign corporation may be sufficient to subject it to the jurisdiction and process of the courts, and yet not subject it to a statute prescribing conditions for doing business within the state.

3. Whether the transactions of the corporation within the state are in furtherance of its charter, functions and purposes, and whether they are of a continuing character, or whether such acts are isolated from the usual business of the corporation and temporary or sporadic, are very important considerations in determining whether it is doing business within that state. Many cases turn upon the character rather than the amount of business done.

4. While mere soliciting and obtaining orders within a state, by the agent of a foreign corporation, for goods to be shipped into the state to the purchasers, does not ordinarily amount to doing business within the state so as to render the foreign corporation amenable to service of process therein, yet, on the other hand, such acts have been held in many cases to constitute doing business in the state, viewed in the light of the facts and the issues involved, where such transaction is part of the regular business of the corporation, and indicates a purpose to carry on a substantial part of its dealings in that state.

5. Much weight is attached to the maintenance of an agency or office in the state. While perhaps a majority of the cases hold that a foreign corporation which merely solicits orders for its goods within a state, to be accepted or rejected by the home office, the goods to be shipped to the purchasers in that state from another state, is not doing business in the local state for the purpose of service of process therein, although the corporation or its agent maintains an office within the local state for the agent's accommodation, they all hold that very little additional

activity on the part of the local agent is required in order to subject the corporation to service of process in the local state. And, it has been held that a foreign corporation is doing business in the state by maintaining therein an office and a selling agent who takes orders for its goods and merely sends them to the home office with directions for shipment. Anno. L. R. A. 1916E, et seq.

The foregoing rules are deduced from, and the field will be found to be covered by, the cases and discussions appearing in 23 Am. Jur., pages 333 to 343, and pages 378 to 389, and footnotes; and annotations in Vol. 2, page 307; Vol. 11, page 320; Vol. 22, page 552; Vol. 30, page 1154, all in American and English Annotated Cases; Ann. Cas. 1918C, page 539; 46 A. L. R. 570; 60 A. L. R. 1030; 95 A. L. R. 1480; 101 A. L. R. 126, and 19 Fed. Digest, Corporations, key 642, beginning at p. 914.

As to an attempted definition, it is said in 23 Am. Jur., Section 361, page 337: "". . . as a general proposition upon which most of the authorities agree in principle, subject to such modifications as may be necessary in view of the particular issue or of the terms of the statute involved, it is recognized that a foreign corporation is 'doing,' 'transacting,' 'engaging in,' or 'carrying on' business in the state when, and ordinarily only when, it has entered the state by its agents and is there engaged in carrying on and transacting through them some substantial part of its ordinary or customary business, usually continuous in the sense that it may be distinguished from merely casual, sporadic, or occasional transactions and isolated acts.'' In Restatement of the Law, Conflict of Laws, Section 167, page 244, this definition is given: "Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts.'' Applying these rules and these definitions to all of the facts of this case, I think it may be accurately said that logic and reason force the con-

clusion that the Commercial Appeal is doing business, or performing work or service in Mississippi.

I think also that the following cases support or sustain that conclusion: Acton v. Wahington Time Company, (D. C. Md.), 9 F. Supp. 74; Black v. Vermont Marble Company, 1 Cal. App. 718, 82 P. 1060; Neyens v. Worthington, 150 Mich. 580, 114 N. W. 404, 18 L. R. A. (N. S.), 142; Milburn Wagon Company v. Com., 139 Ky. 330, 104 S. W. 323; Thomas Mfg. Company v. Knapp, 101 Minn. 432, 112 N. W. 989; Chicago Mill Company v. Sims, 197 Mo. 507, 95 S. W. 344; International Text-Book Company v. Pigg, 76 Kan. 328, 91 P. 74; International Text Book Company v. Lynch, 81 Vt. 101, 69 A. 541; International Harvester Company v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479; American Asphalt Roofing Corp. v. Shankland et al., 205 Iowa, 862, 219 N. W. 28, 60 A. L. R. 986; Tauza v. Susquehanna Coal Company, 220 N. Y. 259, 115 N. E. 915; Cochran Box & Mfg. Company v. Monroe Binder Board Co., 232 N. Y. 503, 134 N. E. 547; Glynn v. Hyde-Murphy Company, 113 Misc. 329, 184 N. Y. S. 462; Heer & Company v. Rose Brothers Company, 120 Misc. 723, 200 N. Y. S. 397; Bogert & Hopper v. Wilder Mfg. Co., 197 App. Div. 773, 189 N. Y. S. 444; Winslow v. Domestic Engineering Co. (D. C.), 20 F. Supp. 576; Harbich v. Hamilton-Brown Shoe Company (D. C.), 1 F. Supp. 63; Clements v. MacFadden Publications (D. C. Tex.), 28 F. Supp. 274. A number of these cases lay stress upon the fact that the foreign corporation maintains a place of business in the local state, with the name and nature of its business appearing thereon.

The able majority opinion cites the case of Item Company, Ltd., v. Shipp et al., 140 Miss. 699, 106 So. 437. That case may be distinguished from the one at bar in these respects:

1. That suit involved Chapter 92, Laws 1916 (Section 4164, Code of 1930), requiring corporations "now or hereafter doing business in this state" to file their charters in Mississippi. Chapter 246, Laws 1940, now under

consideration, uses the words "who shall do any business or perform any character of work or service in this state." It is readily seen that Chapter 246 is broader and more comprehensive in its language than Chapter 92.

2. The wording of Chapter 246 shows that it was designed to enable a resident to sue in a case where a foreign corporation had not complied with Chapter 92. It says "Any non-resident . . . or any corporation not qualified . . . as to doing business herein." If such non-resident is qualified by filing its charter to do business in this State, Chapter 246 is not needed.

3. The object of Chapter 246 is to enable residents of this state to assert in court such rights as they may have resulting from activities in this state of foreign corporations; whereas, in the Shipp case, the residents were undertaking to prevent establishment against them through the courts of Mississippi of an apparent contractual obligation.

4. In the Shipp case, the non-resident maintained no office in Mississippi. As stated above, the courts attach great importance to this fact. Here, appellant maintains an office in Jackson, pays all rent and expenses, on which appears "The Commercial Appeal—Mississippi Office—News—Circulation—Advertising," with a paid agent located therein and in charge thereof, and who there gathers local and state-wide news, which, with his comments and conclusions, the paper publishes, sells and distributes throughout the state.

It is not a question in this case whether either Dunlap or Lamb has authority to receive process. The statute constitutes the Secretary of State its agent, with full authority for process, if appellant is performing any act within the state covered by said Chapter 246, and he was served with process herein.

Corporations can only act through agents. They have no physical being to be present in person in the state. Whatever transactions take place in this state must be through agents.

The law should be interpreted in a practical way to afford opportunity for the administration of equal and exact justice so far as human beings can do so under reasonable interpretation of the statutes. This case illustrates that. The article here did not call the name of Mr. Lee. Its application to him could only be known in and about Webster County, Mississippi, by those familiar with local conditions and who knew or had heard of his activities about the matter published. If he has suffered damage, it is with the people who know him. Under the holding in this case, and that of Forman v. Mississippi Publishers Corp., 195 Miss. 90, 14 So. (2d) 344, this day handed down, Mr. Lee can bring and maintain his action only at Memphis, Tennessee, where, very likely, he is not known at all, or, if so, to a very limited extent. In such case, he must not only incur all of the expense of attending trials and prosecuting his case at that distance, but he is dependent for the presence of witnesses at the trial upon their willingness to volunteer and undergo the inconvenience and consume the time of what is likely to be protracted litigation in another state. He has no way to force them to go, and if they go voluntarily, that apparent interest in his behalf would greatly weaken their testimony before the jury. Again, as a practical illustration, suppose a Chicago or New York paper, engaging in the same activities as is appellant in Mississippi, should publish the vilest kind of libel against a citizen on this state—under these holdings, the libeled citizen must sue in Chicago or New York. This, in practical effect, is to deny the citizen a remedy for his wrongful injury, regardless of how grievous it may be. Such result must needs be declared by the courts, of course, regardless of the hardship and injustice, if the status of the law so requires, but that result, in my opinion, does not follow under the statute and circumstances of this case.

Anderson, J., joins in this opinion.