DAVIS v. NUGENT.

Civ. A. No. 1348.

United States District Court
S. D. Mississippi,
Jackson Division.

April 20, 1950.

Netterville, Berger & Calhoun, Natchez, Miss., Joseph E. Brown, Natchez, Miss., for plaintiff.

Watkins & Eager, Jackson, Miss., for defendant.

MIZE, District Judge.

The defendant, C. V. Nugent, is a non-resident of the state of Mississippi, but is engaged in the wholesale lumber business at Woodville, Mississippi. He was served with process by service upon the Secretary of State under and by virtue of Section 1437 et seq., of the Code of Mississippi of 1942, which, in short, provides that any non-resident individual, company or corporation, if doing business in the state of Mississippi, shall appoint an agent for the service of process and if he fails so to do, then the Secretary of State automatically is appointed as agent for service of process.

The statute provides for actual notice to be served upon the defendant by registered mail and is similar in substance to various statutes throughout the United States of similar import. The defendant has moved to quash the process upon the ground that it is unconstitutional, but that if the statute is constitutional, then the defendant does not come within its terms.

The defendant's operations within the state of Mississippi may be described briefly as follows: The defendant makes arrangements with those having lumber for sale to purchase that lumber if the seller brings his lumber to a lumber yard at Woodville, Mississippi, operated by Douglas Public Service Corporation under lease from the defendant. The lumber to be purchased by the defendant is brought to the lumber yard upon vehicles owned and operated by the seller of the lumber and upon arrival at the lumber yard the lumber is unloaded by the employees and servants of the seller. After unloading, the lumber is then graded and checked by the employees of the defendant. The defendant then would sell this lumber to planing mills in other cities in Mississippi and would hire contract carriers over whom the defendant exercised no control whatever to come load, pick up and deliver the lumber to the vendee of the defendant. A copy of the lease contract between the defendant and the Douglas Public Service Corporation is attached hereto and made a part thereof.[1]

1. Copy

## DOUGLAS PUBLIC SERVICE CORPORATION

### WAREHOUSING CONTRACT

*Agreement* made this ____9th____ day of ____October____ 1947, by and between Douglas Public Service Corporation, a Louisiana Corporation with principal offices at New Orleans, Louisiana, hereinafter referred to as Warehouseman, and C. V. NUGENT of __WOODVILLE__ County of __WILKINSON__, State of __MISSISSIPPI__ an individual, firm or corporation existing under and by virtue of the laws of the State of ――――――――, hereinafter referred to as Storer.

*Whereas*, Warehouseman is engaged in the business of establishing and conducting branch public warehouses, and the Storer desires the use and benefit of such services, and

*Whereas*, Warehouseman has or is about to lease from Storer or others, premises suitable for the conducting of a public warehouse business,

It provides that the defendant, C. B. Nugent, would lease to the Public Service Corporation certain grounds upon which the Public Service Corporation would establish a public warehouse and that the defendant would reimburse the warehouseman for wages due or claimed to be due for the customary warehouse service performed by the bonded warehouse representatives or watchmen; that the defendant, at his sole

NOW, THEREFORE, in consideration of the premises and of the covenants and agreements herein contained, the parties hereto obligate themselves as follows:

FIRST. That Warehouseman will maintain a branch public warehouse on the premises, as covered in said lease, or leases, and issue its warehouse receipts on commodities accepted for storage therein;

SECOND. That Warehouseman will do any and all things necessary to the establishing and maintaining of said public warehouse in conformity with law and particularly will place its bonded representatives and/or bonded watchmen in charge of the premises and of the commodities stored therein and/or thereon;

THIRD. That Storer will reimburse Warehouseman for (1) wages due or claimed to be due for the customary warehouse services performed by the bonded representatives and/or bonded watchmen of Warehouseman plus all Federal, County, Municipal and State taxes thereon; (2) a carrying charge thereon of two (2%) per cent which will be allowed as a deduction if payment is made within ten (10) days from date of such invoices; (3) any and all amounts expended under the provisions of Federal, State, County and Municipal laws and regulations and amounts expended in payment of Federal, State, County and Municipal taxes, excepting only income taxes, imposed upon or arising out of the operation of the herein referred to warehouse or warehouses;

FOURTH. That Storer at its sole charge and expense shall furnish to Warehouseman all labor, material, etc., required for the receiving, handling, delivering, moving, re-conditioning, labeling and for the protection and/or preservation of the merchandise covered by this contract. Said labor shall be subject, when performing said services, to the exclusive direction and control of Warehouseman. Should storer fail to thus furnish the aforesaid labor and/or material, etc., it shall be bound and obligated to promptly reimburse Warehouseman for the cost of any such labor and/or material, etc., as shall be used by Warehouseman. That Warehouseman without cost to Warehouseman shall have the right at all times during the continuance of this agreement to employ the facilities of the Storer for receiving, handling, weighing, storing, moving, protecting, preserving re-conditioning, packing, shipping or delivering property stored under this agreement. Storer shall further reimburse Warehouseman for the cost of all bonds, recording expense, State license fee, cost of constructing and maintaining enclosures, placing signs, etc., as well as for the expenses of Warehouseman's traveling auditors when visiting the warehouse stocks and records, said amounts to be paid promptly upon receipt of invoice from Warehouseman. Storer will reimburse Warehouseman all expenses including court costs and attorney's fees expended or incurred by Warehouseman in protecting the goods stored hereunder from seizure, attachments, or other judicial process for any cause whatsoever, and, in handling the establishing and settling of any shortage which may occur in the goods stored hereunder. Any charges covered by this paragraph, if not paid by Storer, shall as to any amount in excess of the maximum charges stated upon the face of receipt and accordingly secured by the warehouse liens, be hereby secured by a pledge of any equity which Storer may at any time have in receipts hereafter issued to or for it by Warehouseman and the person, firm or corporation to whom Storer may have pledged said receipts is hereby designated as the agent to hold said receipts in pledge for the account of Warehouseman when notified of this pledge by Warehouseman; all merchandise in excess of the amounts called for by outstanding receipts even though not covered by any receipts shall be held in pledge by the Warehouseman to secure all warehouse charges and losses which the warehouseman might sustain by virtue of any shortage in the merchandise actually covered by outstanding receipts and may be used to make up any such shortage; that in the settlement of any claims for shortage in merchandise placed in storage by the Storer, Warehouseman, if it is liable therefor, shall have the right at its option to either replace the missing merchandise with merchandise of like kind and quality or to pay for it at the market value thereof in accord-

expense, shall furnish to the warehouse all the labor, material, etc. necessary for receiving, handling, delivering, moving, reconditioning and preservation of the merchandise stored with him. The plaintiff was an employee of the defendant as a lumber checker on the lumber yard, plant and premises of the defendant around this public warehouse, and plaintiff alleges that there were heavily laden lumber trucks of various persons selling and delivering lumber to the defendant, C. V. Nugent, and

ance with law; that the annual minimum for operating charges, exclusive of labor and materials will be ___300.00___ payable in advance as invoiced;

FIFTH. That the following branch warehouse storage charges shall apply on the commodities and goods of Storer received for storage:
1/8th of 1% per calendar month or fraction thereof on market values.
Minimum monthly billing $35.00
Set-up charge non-recurring $50.00

SIXTH. That the foregoing warehouse storage charges are subject to an annual minimum of $___420.00___ payable as invoiced, balance if any, due and payable on or before each annual anniversary date of this contract, or when the last outstanding receipt is cancelled, whichever is the earlier date;

SEVENTH. The amount paid as a minimum storage charge for any storage year shall constitute full payment for all storage charges accruing during said year under the terms of this contract upon merchandise stored with Warehouseman by Storer for which receipts designated as "Not-negotiable" receipts in favor of Storer are issued by Warehouseman;

EIGHTH. If for any one or more entire yearly periods covered by this contract, Storer should find it unnecessary to warehouse any of its products and secure warehouse receipts thereon, it is agreed that during such period of time the Storer shall not be required to pay to the Warehouseman the annual minimum, or the warehousing and other charges provided for in this contract; provided, however, that this provision shall not be applicable as long as any receipts issued by the Warehouseman remain outstanding, or if Storer shall have failed to pay all amounts earned hereunder by Warehouseman. The yearly periods herein referred to shall be calculated from the date specified in paragraph Fourteenth of this contract, and this provision shall have no application to any yearly period in which storer has any of its products warehoused with Warehouseman; provided, that this contract shall be extended one year for each year of suspension or nonuse by storer:

NINTH. That nothing herein contained shall affect the right of Warehouseman to store the goods of other parties in and/or on the premises in pursuance of its business as a public warehouseman; provided that the requirements of the Storer shall always be given preference;

TENTH. That Storer, its successors and assigns, agrees to employ Warehouseman during the period of this contract for all such field warehousing services as it may require;

ELEVENTH. That Storer guarantees to Warehouseman that all merchandise is and will continue to be, throughout the time that same is in storage with Warehouseman, in the same condition as it is represented to be by Storer when placed in storage; and Storer will reimburse Warehouseman for any and all expense necessary or incidental to the maintenance of such merchandise in said condition, and that in connection with this guarantee, Storer will also subrogate or transfer to Warehouseman any and all claims or rights accruing to it in connection with the manufacture of the merchandise stored. Storer further agrees that Warehouseman's responsibility shall be limited to those particular lots represented by its warehouse receipts, and all other goods which may be stored in the premises are at the Storer's risk;

TWELFTH. That the existence of this contract is contingent upon the Warehouseman securing a lease or leases upon premises for storage space which will be satisfactory and suitable to Warehouseman, and which will entitle Warehouseman to the uninterrupted and exclusive right of possession of the premises, so demised, free from the claims of any mortgagee, upon said leased premises,

in the performance of plaintiff's duties he was required to go about the lumber yard used by his employer and at places where these heavily laden lumber trucks came on the yard in order to check the lumber on behalf of the defendant, and that while he was so engaged in his duties a heavily laden lumber truck came over a large hole which had been insecurely covered, and as a result, when the wheels of the truck hit

and/or landlord for a lien or preference upon the goods to be stored in said premises, for the entire period as provided in said lease or leases;

THIRTEENTH. That because the premises to be occupied by Warehouseman as a public warehouse are situated in close proximity to the premises of Storer and, in consideration of the low storage charges hereinabove agreed to by Warehouseman, Storer binds and obligates itself to provide such safeguards and protection against damage to the stored merchandise by fire, explosion or other casualty as by law and/or custom and/or jurisprudence, Warehouseman is required to provide; and Storer further binds and obligates itself to indemnify and hold Warehouseman harmless against any loss, claim or damage which Warehouseman may sustain because of any damage suffered by said stored merchandise as a result of fire, explosion or other casualty. Storer further binds and obligates itself to pay any expense required for the protection, preservation and/or removal of the stored merchandise from the leased premises in the event said leased premises should be damaged or destroyed by any cause whatsoever and whether or not by an act of God. Any amounts becoming due to Warehouseman, under the terms of this paragraph, shall become a part of the storage charges and be secured by the lien of the Warehouseman, which lien, however, shall not as to any receipt exceed the maximum charges stated thereon; said charges shall further be secured as provided in Paragraph Fourth hereof;

FOURTEENTH. That this contract shall be in effect for the period of three years from the ___9th___ day of ___October___, 194_7_, unless extended as provided in Paragraph Eighth; and unless either party gives to the other written notice of intention to terminate at least ninety days prior to termination, this agreement shall continue to be extended upon the same terms and conditions as are herein contained for a further period of three years and shall continue in full force and effect for each triennium thereafter until terminated by either party giving to the other written notice of the intention to terminate at least ninety days prior to the expiration of the then current term; provided, however, that Warehouseman shall have the right to cancel this contract at any time upon giving thirty days written notice to Storer, if Storer is in arrears in the payment of charges or other amounts due Warehouseman, or if Storer is interfering with the activities of Warehouseman as a public warehouseman. Warehouseman shall further have the right to cancel this contract immediately by giving written notice to Storer if Storer has perpetrated any fraud or deception upon Warehouseman, or if there should occur any shortage of the merchandise stored hereunder. The cancellation of this contract shall not in any manner, or to any extent, affect any merchandise then on storage with Warehouseman, and all the provisions of this contract shall continue in effect as to said merchandise and warehouse receipts covering same until said receipts have been surrendered to and cancelled by Warehouseman.

It is understood and agreed that the annual minimum storage charge applicable to this contract is to be considered in conjunction with a similar contract with C. V. Nugent dated September 6, 1947 for the Natchez Mississippi location.

Witnessed By:                                    DOUGLAS PUBLIC SERVICE
M. J. BROUSSARD                                        CORPORATION

L. E. ANDRESSEN                                        JAY WEIL
                                            By _____
                                                              President
                        (ORIGINAL SIGNED)
Witnessed By:
ALWYN K. ADDISON                                   C. V. NUGENT

MAY ANDERSON

this deep depression the lumber fell off and he was injured.

The constitutionality of this statute has been upheld by the Supreme Court of Mississippi in the case of Condon v. Snipes, 205 Miss. 306, 38 So.2d 752. It also has been upheld in the case of Sugg v. Hendrix, 5 Cir., 142 F.2d 740, 743, and is no longer open to construction for its constitutionality, but in order for it to be constitutional, it must be constitutionally construed. In construing this statute the Circuit Court of Appeals in the Sugg case, supra, said:

"We are not called on to determine the validity of the statue when applied to suits arising out of a business which the state had no occasion, nor power, to regulate, but it seems clear that the state had the power to enact the statute in question for the safety and protection of persons receiving injury in and about the work of employers-in-absentia, particularly when the nature of the work is fraught with danger to those required to be in and about it, as alleged in the present case. * * * The thought is not shocking that one who comes into a state for the purpose of conducting his business in that state should be made amenable to the courts and laws of the state and answerable to its citizens for damages sustained by them which were the result of the business transacted in the state."

When the cause of action in the present case originated Mississippi did not have a Workmen's Compensation Law and the suit is one under the common law of master and servant as modified by statutes. Since that time Mississippi has passed the Workmen's Compensation Law, Laws 1948, c. 354, and, of course, it is well settled that under the police powers of a state, it does have the right to pass such laws for the health and protection of citizens within its state. The passage of the present statute for substituted process now under construction was for the protection of the citizens within the confines of this state and is a reasonable regulation of the police power of the state. It is not unreasonable to require any non-resident citizen or corporation, before coming into the state to do business, to appoint an agent for the service of process when the business to be conducted is of a dangerous nature and within the police power of the state to regulate. The Supreme Court of the United States in Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230, after reviewing many authorities, stated that the general trend of authorities toward settling the validity of service of process by statutory provisions themselves indicate that there is reasonable probability that if the statutes are complied with the defendant will receive actual notice, and to uphold such statutes, and that statement is exemplified by the many authorities upholding the validity of such statutes since the announcement in the Pizzutti case. A large number of authorities bearing on the subject, likewise, are reviewed in the Sugg case, supra, and the Circuit Court of Appeals in the Sugg case said this: "It seems clear that the state had the power to enact the statute in question for the safety and protection of persons receiving injury in and about the work of employers-in-absentia, particularly when the nature of the work is fraught with danger to those required to be in and about it, as alleged in the present case." In the case of Lee v. Memphis Publishing Co., 195 Miss. 264, 14 So.2d 351, 152 A.L.R. 1428, the Supreme Court of Mississippi held, in substance, that in constitutionally construing this statute, the business of the defendant must be such and of such nature and character as to warrant the inference that the non-resident had subjected itself to the local jurisdiction. It is not every type of business, nor any one particular act of business, that necessarily subjects a non-resident to jurisdiction, but whether the service under the statute will be good or not depends upon the facts of each particular case. If a non-resident is doing such business in the state as would subject him to the jurisdiction of the court and is of such nature that it is hazardous or subject to the police powers of the state to be regulated, and the cause of action grows out of such business so done, then the substituted service is good and the statute is constitutional.

In this particular case the defendant was engaged in business subject to be regulated under the police powers of the state of Mississippi and, therefore, the service of process was good. The motion to quash and the motion to dismiss will be overruled.