# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-CA-01174-SCT

*CITY OF JACKSON, MISSISSIPPI*

*v.*

*LATOYA LAWSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/18/2024 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | ROMAINE LEVEAN RICHARDS |
| | JAMES RICHARD DAVIS, JR. |
| | JAMES ANDERSON, JR. |
| | JEFFREY MATTHEW GRAVES |
| | KEYONA HENRY STEWART |
| | SAMUEL L. BEGLEY |
| | DREW McLEMORE MARTIN |
| | PHILIP CAREY HEARN |
| | WILLIAM STACY KELLUM, III |
| | CHARLES CASSIDY COLE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DREW McLEMORE MARTIN |
| | JASON LEE NABORS |
| | SAMUEL L. BEGLEY |
| | SHERIDAN ASHANTI SIMONE CARR |
| ATTORNEYS FOR APPELLEE: | WILLIAM STACY KELLUM, III |
| | PHILIP CAREY HEARN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/02/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., GRIFFIS AND SULLIVAN, JJ.**

**COLEMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     While riding her motorcycle on a Jackson street, LaToya Lawson rode into a pothole.

After a bench trial, the Hinds County Circuit Court awarded damages to her to compensate

her for the injuries she sustained. The City of Jackson appeals the Hinds County Circuit Court's judgment. Because the city is not immune under the Mississippi Tort Claims Act, the judgment of the Hinds County Circuit Court is affirmed.

## FACTS

¶2. In March 2018, Lawson was traveling westbound on Bullard Street in Jackson while riding her motorcycle. She came to a stop at a red light behind a U-Haul truck in congested bumper-to-bumper traffic. A large pothole existed in the middle of her lane, but Lawson's view of the roadway was obstructed by the truck directly in front of her. When the light turned green, she proceeded forward behind the U-Haul and struck the previously concealed pothole, which immediately caused her to lose control of the motorcycle. The force of the impact threw Lawson from the motorcycle onto the roadway.

¶3. Lawson experienced immediate and severe pain following the crash, and her ankle was bent in an unnatural position. Emergency responders from American Medical Response arrived, immobilized Lawson, and transported her by ambulance to the University of Mississippi Medical Center, where she underwent X-rays of her ankle. The treating physician determined that immediate surgical intervention was required to prevent further damage. Lawson underwent surgery to repair her ankle, during which plates and screws were implanted, and she remained hospitalized for two days before being discharged.

¶4. After the surgery, Lawson could not care for herself and stayed with her mother. She was confined to a wheelchair and experienced significant pain. During the early weeks of her recovery, Lawson required constant assistance with basic daily activities. Once she

2

progressed from a wheelchair to a walker, she returned home to live with her children.

¶5.     As a result of her injuries, Lawson incurred substantial medical expenses, including $1,425.04 from AMR, $61,746.17 from the hospital, and $4,431.66 from Methodist Rehabilitation, for a total of $67,602.87.

¶6.     Before the accident, Lawson owned and operated Mississippi Professional Nursing Care, where she worked as a caregiver providing physical assistance to patients. Following the accident, she was no longer able to perform essential job duties such as lifting patients and pushing wheelchairs and was eventually forced to stop working altogether. Lawson's inability to work caused significant financial hardship, which led to her falling behind on household bills, having her electricity disconnected, and becoming delinquent on her mortgage. Her ankle continued to swell and remained painful for years after the accident, and at the time of trial she still experienced pain and swelling with activity.

¶7.     On March 1, 2018—eight days before Lawson's accident—a citizen complaint had reported a large pothole in the middle of Bullard Street affecting traffic. The City classified the pothole as high priority on its March 1 report. City records later explicitly acknowledged the City's prior knowledge of the pothole, and the City's risk manager confirmed that the report preceded Lawson's accident. The City did not repair the pothole until May 30, 2018, and the record contains no evidence that the City erected any warning signs, cones, or barricades before Lawson's accident.

¶8.     Lawson filed suit alleging negligence and gross negligence based on the City's failure to maintain Bullard Street in a reasonably safe condition, to timely repair the pothole, or to

3

warn motorists. After the circuit court denied the City's motion for summary judgment and granted Lawson's motion for partial summary judgment on liability, the court conducted a bench trial on damages on February 26, 2024. On September 18, 2024, the court entered final judgment in Lawson's favor awarding Lawson $67,602.98 in economic damages and $152,000 in noneconomic damages.

¶9. The City appealed from the final judgment and raised three issues, *verbatim*:

1. Whether the City of Jackson is exempt from liability under the Mississippi Tort Claims Act based on discretionary function immunity provided in Miss. Code Ann. § 11-46-9(1)(d) because the City's repair and maintenance of its streets is a discretionary matter.

2. Whether Miss. Code Ann. § 21-37-3(1)-- which states that "the governing authorities of municipalities shall have the power to exercise full jurisdiction in the matter of streets . . . to open and lay out and construct the same; and to repair, maintain, pave, sprinkle, adorn, and light the same"--- only provides power to a municipality to exercise jurisdiction over its streets and not a mandatory duty to maintain them.

3. Whether the trial court erred in entering its Order denying Appellant City of Jackson's Motion for Summary Judgment regarding Plaintiff Latoya Lawson's claims for negligence, even though the aforesaid Order of the trial court expressly and correctly found that the City of Jackson was entitled to discretionary function immunity under the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9(1)(d), because the Plaintiff's claims pertained to the maintenance and repair of city streets. In that regard, case law interpreting the Mississippi Tort Claims Act holds that a trial court's finding of immunity under any one exemption listed in Miss. Code Ann. § 11-46-9(1) necessitates dismissal of the entire case. *Aultman v. Lawrence Co.*, 95 So. 3d 702, 708 (Miss. Ct. App. 2012) (when the trial court grants summary judgment in favor of a governmental defendant as to discretionary function immunity under Miss. Code Ann. 11-46-9(1)(d), the trial court should not engage in any analysis regarding the Plaintiff's underlying tort claims.)

4

## STANDARD OF REVIEW

¶10.　"The application of the MTCA is a question of . . . law that is reviewed *de novo*." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 135 (¶ 5) (Miss. 2013) (citing *Fairley v. George Cnty.*, 871 So. 2d 713, 716 (¶ 7) (Miss. 2004)). "This Court reviews a trial court's decision to grant or deny summary judgment de novo." *City of Jackson v. Maxie ex rel. M.Y.*, 412 So. 3d 1156, 1159 (¶ 11) (Miss. 2025) (citing *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005)).

## DISCUSSION

### Issue 1:　　Discretionary-Function Immunity

¶11.　The City claims that the trial court erred by failing to find the City has discretionary-function immunity under the Mississippi Tort Claims Act. Mississippi Code Section 11-46-9 provides that:

> (1)　A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> 　. . . .
>
> (d)　Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;

Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2019). The immunity conferred by the subsection has become known as discretionary-function immunity. *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 181 (¶ 9) (Miss. 2018). The purpose of discretionary-function immunity "is to prevent judicial second-guessing of legislative and administrative decisions

5

grounded in social, economic, and political policy through the medium of an action in tort."

*Id.* at 182 (¶ 11) (internal quotation mark omitted) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).

¶12. In 2018, our Court readopted the familiar two-part public policy function test to determine the applicability of discretionary-function immunity. *Id.* at 185 (¶ 23). First, the Court "must ascertain whether the activity in question involved an element of choice or judgment." *Maxie*, 412 So. 3d at 1159 (¶ 8) (internal quotation marks omitted) (quoting *Wilcher*, 243 So. 3d at 187). Second, the Court must determine "whether that choice or judgment involved social, economic, or political-policy considerations." *Id.* (internal quotation mark omitted) (quoting *Wilcher*, 243 So. 3d at 187). In answering the second prong, the "Court must distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens." *Stewart ex rel. Womack v. City of Jackson*, 804 So. 2d 1041, 1048 (¶ 17) (Miss. 2002) (internal quotation mark omitted) (quoting *Gale v. Thomas*, 759 So. 2d 1150, 1162 (Miss. 1999)). The former decisions carry immunity; the latter do not. "[W]hen reviewing whether a challenged action is afforded immunity, a court's focus is 'on the nature of the actions taken and whether they are susceptible to policy analysis.'" *Wilcher*, 243 So. 3d at 188 (¶ 34) (internal quotation marks omitted) (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 75 (Miss. 2012) (Waller, C.J., dissenting), *abrogated by Wilcher*, 243 So. 3d at 189).

¶13. A city has a duty to maintain safe streets within its jurisdiction; however, "[m]ere proof of a defective condition in the streets, no matter how dangerous, is not sufficient to

show breach of the City's duty to maintain its streets safely. A would-be plaintiff must go further and show that the City had actual or constructive knowledge of the defect." *City of Jackson v. Locklar*, 431 So. 2d 475, 479-80 (Miss. 1983).

¶14.    *Wilcher* instructs the court to "focus . . . 'on the nature of the actions taken[.']" *Wilcher*, 243 So. 3d at 188 (¶ 34) (quoting *Pratt*, 97 So. 3d at 75). In the case *sub judice*, the action in question is not the City's broad policy decision about allocation of limited economic resources across its entire road system. Rather, it is the City's failure, after receiving actual notice of a dangerous condition in the middle of Bullard Street, to provide even minimal warning to drivers or to repair the condition within a reasonable time.

¶15.    In the activity in question, the City had decisions to make regarding the pothole after receiving the March 1 complaint, *e.g.*, how quickly to dispatch a repair crew or whether to prioritize permanent repair or warning signs. Thus, "the activity in question involved an element of choice or judgment[,]" and the first prong of the discretionary-function test is satisfied. *Maxie*, 412 So. 3d at 1159 (¶ 8) (internal quotation mark omitted) (quoting *Wilcher*, 243 So. 3d at 187).

¶16.    When addressing the second prong, however, the law requires the Court to "distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens." *Stewart*, 804 So. 2d at 1048 (¶ 17) (internal quotation mark omitted) (quoting *Gale*, 759 So. 2d at 1162). The decision not to warn of or repair the pothole is not the kind of policy-setting decision that implicates governmental functions and that discretionary-function immunity is intended to insulate from

7

judicial review. Failing to repair or warn about a known dangerous pothole is more akin to "simple acts of negligence which injure innocent citizens." *Id.* (internal quotation mark omitted) (quoting *Gale*, 759 So. 2d at 1162). Further, holding the City liable for its failure to address the known dangerous condition in a reasonably timely manner does not amount to "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Wilcher*, 243 So. 3d at 182 (¶ 11) (internal quotation mark omitted) (quoting *Gaubert*, 499 U.S. at 322). Accordingly, the activity fails the second prong of the two-part test, and the City lacked discretionary-function immunity.

**Issue 2:      Mississippi Code Section 21-37-3(1)**

¶17.     The City asks the Court to determine if Mississippi Code Section 21-37-3(1) (Rev. 2015) creates a mandatory duty for the city to maintain its streets. The City's clear implication is that if the section does not create a duty, then the city would have no obligation to repair dangerous conditions on its streets. The Court, however, is not compelled to answer the question because the implication is inaccurate. Whether or not the statute creates the duty, the duty of a city to provide reasonably safe streets still exists. "A municipality is under the duty to exercise reasonable care to keep its streets reasonably safe for those using them with reasonable care." *Locklar*, 431 So. 2d at 479 (citing *City of Hattiesburg v. Hillman*, 222 Miss. 443, 76 So. 2d 368, 370 (1955)). "[W]hen given notice of a dangerous condition . . . a governmental entity become[s] duty-bound to warn or provide relief from the dangerous condition to those who use the roads." *Jones v. Miss Transp. Comm'n*, 920 So. 2d 516, 519

8

(¶ 4) (Miss. Ct. App. 2006) (citing *Barrentine v. Miss. Dep't of Transp.*, 913 So. 2d 391, 394 (¶ 11) (Miss. Ct. App. 2005)).

¶18. Thus, the City is asking for an advisory opinion, and the Court does not provide advisory opinions. "As a matter of judicial policy, this Court does not issue advisory opinions." *Hughes v. Hosemann*, 68 So. 3d 1260, 1263 (¶ 6) (Miss. 2011). Because the question raised in issue two is advisory in nature and has no bearing on the outcome of the dispute, we decline to address it.

**Issue 3: Order Denying Summary Judgment**

¶19. The logic in the trial court's order denying summary judgment was erroneous, but the conclusion was correct. The order opined that the City was entitled to discretionary-function immunity but that the City lost that immunity by having actual notice of the dangerous condition on Bullard Street. The trial court incorrectly found that the second prong of the two-part test was satisfied but then wrote that the City's actual notice of the danger removed the immunity.

¶20. The court conflated two separate potential avenues for the City to have immunity: Mississippi Code Sections 11-46-9(1)(d) and -9(1)(v) (Rev. 2019). In its order denying summary judgment, the trial court wrote:

> Moving on to the second prong, the Court must consider whether the choice or judgment to repair the streets of the City of Jackson involves social, economic or political policy. The Court does find that it does. So, based on the two-part test the City of Jackson is immune. However, that is not the end of the Court's inquiry. In *Jones v. Mississippi Transportation Commission*, 920 So. 2d 516, the Mississippi Court of Appeals held that § 11-46-9 of the Mississippi Code and corresponding case law makes it clear that a governmental entity is immune from claims arising from a nonobvious dangerous condition on

9

government property or failure to warn of the dangerous condition absent actual or constructive notice of the dangerous condition. The Court found that when a governmental entity is given notice of a dangerous condition, that governmental entity becomes duty bound to warn or provide relief from the dangerous condition to those who use the road.

While analyzing the second prong of the two-part test, the trial court failed to "distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens." *Stewart*, 804 So. 2d at 1048 (¶ 17) (internal quotation mark omitted) (quoting *Gale*, 759 So. 2d at 1162). The decision to leave a known dangerous pothole unrepaired and the public unwarned does not constitute a "policy decision[] implicating governmental functions." *Id.* (quoting *Gale*, 759 So. 2d at 1162). The trial court erred by failing to recognize and apply that distinction.

¶21. Regardless, the trial court ultimately reached the correct result by concluding that the City was not immune. If the City had not had notice of the dangerous condition, it would have been immune under a separate provision of the MTCA, Mississippi Code Section 11-46-9(1)(v), which immunizes a governmental entity from liability "[a]rising out of an injury caused by a dangerous condition . . . of which the governmental entity did not have notice[.]" The court properly found that the City had notice and was thus not immune, but Section 11-46-9(1)(v) did not *remove* discretionary-function immunity that Section 11-46-9(1)(d) created, as the trial court's order implied. The City never possessed discretionary-function immunity under Section 11-46-9(1)(d) to begin with and, because the City had actual notice, Section 11-46-9(1)(v) was likewise inapplicable.

¶22. As the Court has consistently held, "if the judgment of [a trial] court can be sustained

10

for any reason, it must be affirmed, and even though the trial judge based it upon the wrong legal reason." *Patel v. Telerent Leasing Corp.*, 574 So. 2d 3, 6 (Miss. 1990) (citing *Shewbrooks v. A.C. & S., Inc.*, 529 So. 2d 557 (Miss. 1988), *superseded by statute as stated in* **In re Est. of Johnson v. Johnson**, 237 So. 3d 698 (Miss. 2017); *Allgood v. Bradford*, 473 So. 2d 402 (Miss. 1985); *Briggs v. Benjamin*, 467 So. 2d 932 (Miss. 1985); *Tedford v. Dempsey*, 437 So. 2d 410 (Miss. 1983); *Taylor v. F. & C. Contracting Co., Inc.*, 362 So. 2d 625 (Miss. 1978); *Texas Gas Transmission Corp. v. City of Greenville*, 242 So. 2d 686 (Miss. 1970); *Lee v. Memphis Publ'g Co.*, 195 Miss. 264, 14 So. 2d 351 (1943)). "In other words, [the Court] will uphold a judgment where a 'lower court reaches the right result for the wrong reason.'" *Cope v. Thrasher Constr., Inc.*, 231 So. 3d 989, 995 (¶ 12) (Miss. 2017) (quoting *Finnie v. Lee Cnty. Bd. of Supervisors*, 186 So. 3d 831, 834 (¶ 7) (Miss. 2016)).

¶23. Accordingly, the Court affirms the trial court's correct result regardless of its erroneous reasoning.

## CONCLUSION

¶24. Ultimately, the trial court correctly found that the City of Jackson was not immune under the Mississippi Tort Claims Act; therefore, the judgment of the Hinds County Circuit Court is affirmed.

¶25. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., ISHEE, GRIFFIS AND SULLIVAN, JJ., CONCUR. BRANNING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**