513 So.2d 922 (1987)
ESTATE OF Forrest J. JOHNSON
v.
Jerry R. ADKINS, M.D.
No. 57249.
Supreme Court of Mississippi.
September 30, 1987.
*923 William Townsend Reed, Pascagoula, for appellant.
Karl R. Steinberger, Bryant, Stennis & Colingo, Pascagoula, for appellee.
Before ROY NOBLE LEE, PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
The Estate of Forrest J. Johnson has appealed from a judgment entered by the Chancery Court of Jackson County, Mississippi, in favor of Jerry R. Adkins, M.D., in the sum of fifty-two thousand seven hundred seventy-three dollars and ninety-three cents ($52,773.93). The complaint was founded upon a quantum meruit and unjust enrichment claim resulting from representations of Forrest J. Johnson, in his life-time, to devise certain lands to the appellee. Upon the death of Mr. Johnson, it was discovered that the will failed to make such a devise. The Estate has appealed to this Court and assigns three (3) errors in the trial below:
I. THE CHANCELLOR ERRED BY HOLDING THAT THE APPELLEE PROVED HIS CASE BY CLEAR AND CONVINCING EVIDENCE.
II. THE CHANCELLOR COMMITTED MANIFEST ERROR BY NOT CLOSELY SCRUTINIZING THE CLAIM OF DR. JERRY ADKINS SINCE ADKINS OCCUPIED A FIDUCIARY RELATIONSHIP WITH FORREST J. JOHNSON.
III. THE CHANCELLOR ERRED IN HOLDING THAT JERRY R. ADKINS, M.D., WAS ENTITLED TO RECOVER FROM THE ESTATE BASED UPON QUANTUM MERUIT AND UNJUST ENRICHMENT.
The assigned errors are closely related and will be discussed together.

Facts
Mr. Forrest J. Johnson first became acquainted with Dr. Jerry R. Adkins, appellee, when the latter performed emergency surgery on Mr. Johnson in 1968 and treated him through his recovery from a critical illness. Mr. Johnson was married, but he and his wife, Lena, had no children. A close relationship developed between the Johnsons and appellee, and was much more than the usual relationship of doctor-patient. Their relationship was more like that of parents and son. They acted like family. Appellee treated the Johnsons for all their medical needs and never charged a fee, except what Medicare paid. They took trips together, including trips to Louisiana and Illinois.
The Johnsons owned, and lived on, a 57-acre farm near Ocean Springs, Mississippi. From about 1966 to 1973, Johnson maintained a cattle operation on the farm in partnership with one M.F. Hodges. That operation ended amicably, and Hodges continued to perform work for Johnson on the farm.
Appellee was interested in the racing and breeding of thoroughbred horses, and, for that purpose, he owned a horse ranch named "Camelot Farms." After the cattle operation on the Johnson farm was discontinued, Mrs. Johnson approached appellee about putting some of his horses on the farm to give Johnson something to do. Johnson was about seventy-four (74) years of age, and Adkins was around thirty-eight (38). After making the suggestion, Mrs. Johnson called appellee out to the farm for the discussion of something "very important." At that meeting, the Johnsons told appellee they had decided to leave their farm to him because he had been like a son to them.
Johnson decided he wanted the farm to be a full-scale thoroughbred training operation. *924 Many improvements were necessary to convert the farm from the cattle facility to the horse ranch. The appellee purchased a house trailer for the use of a professional horse trainer recruited by Johnson and appellee; the barn was converted from a feed barn to a horse barn; stalls were built and electricity was provided; the existing barbed wire fences were replaced with regular wire with creosoted boards on top; and all fence posts were replaced, the fencing totalling around 8,000 feet; a 4-inch water well was drilled to provide adequate water for the horses; and a regulation race track was constructed on the farm. All of these improvements were paid by Adkins, d/b/a/Camelot Farms, appellee.
Johnson oversaw the day-to-day operations of the horse farm, and he exercised authority to hire and fire farm hands. He paid the operating costs of the horse farm from the Camelot Farms checking account. At the beginning, appellee gave Johnson signed blank checks for Johnson to complete, and later he authorized Johnson to sign Camelot Farms checks himself. The Camelot Farms checking account balance become too low to support the operations on the Johnson farm, and Johnson expressed a desire to loan appellee a sufficient amount to keep the farm going. Accordingly, appellee gave a series of promissory notes to Johnson from May 13, 1973, through July 15, 1978, when the balance on the last note was down to $5,937.44, at which time, the note was marked "Cancelled" by Johnson. Adkins testified that he had paid off that note in cash.
By May, 1978, Johnson's health began to deteriorate and he was unable to carry on the operations of the horse ranch. Mrs. Johnson died on November 15, 1979. Johnson and appellee continued to be on good terms and would visit in appellee's office each Tuesday afternoon. In addition, Johnson accompanied appellee and his family on several occasions to Louisiana to watch appellee's horses race. Johnson stated numerous times that he intended to bring the horses back to the ranch when his health improved. He had offers to buy the horse equipment on the farm, but Johnson refused, stating that the equipment belonged to appellee.
Johnson died on January 17, 1984. The horse operations were never resumed on the ranch. His will, dated November 19, 1980, was probated and reflected that Johnson left the entirety of his estate in trust to provide for the support and maintenance of his three surviving sisters, for the placing of flowers on the family burial plot, and for the education of local young persons wishing to enter the religious vocation of the Catholic Church. No mention of appellee was made in the will. Appellee then probated a claim against the estate in the sum of seventy-two thousand nine hundred twenty-one dollars and six cents ($72,921.06) for funds expended by him on the improvement of the Johnson farm in its conversion from a cattle farm to a horse ranch. He did not contest the will, but the Johnson estate contested Adkins' claim.
While the claim contest was pending, the chancellor authorized Johnson's executor to sell the farm to Drs. Albert Earl Diaz and Charles P. Stroble for one hundred sixty thousand dollars ($160,000). The farm had been appraised at one hundred forty-seven thousand dollars ($147,000). After the acquisition, the purchasers used the property as a horse farm.
At the trial on the contested claim, in addition to other evidence, four witnesses testified in support of the claim that Johnson had told them on numerous occasions that the farm would go to appellee after they died. On the other hand, witnesses for the estate testified that Johnson told them he was leaving all his property to charity and the Catholic Church.
The chancellor found that there was a close relationship between Johnson and appellee for a number of years, and that some sort of agreement obviously existed between them. He found that the effort of appellee in converting the farm to a horse ranch was a "positive factor" in selling the property for $160,000. He entered judgment for appellee, holding that he was entitled to recover under the theories of unjust enrichment and quantum meruit. The *925 chancellor granted appellee's claim of $72,921.06, but deducted half of the expenses, which were listed, for a total judgment of fifty-two thousand seven hundred seventy-three dollars ninety-three cents ($52,773.93), together with interest and costs.

Law

I.  II.
The appellant estate contends that (1) the chancellor erred in holding appellee proved his case by clear and convincing evidence, and (2) the chancellor committed manifest error by not closely scrutinizing the claim of Dr. Jerry Adkins, since Adkins occupied a fiduciary relationship with Forrest J. Johnson.
The chancellor held that appellee proved his claim by clear and convincing evidence and relied upon Kelly v. Shoemake, 460 So.2d 811 (Miss. 1984). Kelly involved a claim under an alleged oral contract to devise land, and the Court stated that "[c]lear, definite and certain evidence must establish both components fo the alleged contract, its existence and its terms or scope." 460 So.2d at 817. In the present case, the appellee's claim was based upon an oral representation and statement by decedent that his farm would be left to appellee upon decedent's death. In reliance upon that representation, appellee made valuable improvements to decedent's farm for which appellee now seeks restitution.
While appellee does not seek to enforce a promise to devise, he must show the existence of the oral representation in order to substantiate his claim for restitution. Under Kelly, the existence of such an oral agreement or representation must be established by clear, definite and certain evidence. The chancellor found that a deliberate effort and agreement was made by Johnson to Dr. Adkins according to the testimony of witnesses who have no interest in the outcome of the case, while possessing first-hand knowledge of the intentions and expressions of Johnson. Findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. Even though this Court may disagree with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong. Brown v. Williams, 504 So.2d 1188 (Miss. 1987); Harkins v. Fletcher, 499 So.2d 773 (Miss. 1986); Richardson v. Riley, 355 So.2d 667 (Miss. 1978). Here, the chancellor found that appellee relied in good faith on decedent's oral representations and that, therefore, he was entitled to restitution.
Assignment I is rejected.
In the trial below, appellant did not plead or raise at any point the No. (2) question of undue influence and fiduciary relationship. That issue is assigned, argued and presented for the first time on appeal. It is elementary that this Court will not review on appeal those issues which were not raised in the court below. Estate of Myers v. Myers, 498 So.2d 376 (Miss. 1986); Bailey v. Collins, 215 Miss. 78, 60 So.2d 587 (1952); Parker v. California Co., 54 So.2d 174 (Miss. 1951  not reported in state reporter); City of Biloxi v. Lowery, 179 Miss. 364, 175 So. 200 (1937). In Bailey v. Collins, supra, a party who tried his case on an undue influence theory changed his argument to a contract theory on appeal. The Court refused to allow this switch of horses in the middle of the stream and said:
This was not the case which the chancellor tried and decided. Appellant has now chosen in this Court an entirely different line of battle from that chosen in the court below, and we think the theory of the case as now presented to us on this appeal is not properly before us for review.
215 Miss. at 83, 60 So.2d at 589.
The evidence in the trial below did not, in the slightest, reflect undue influence on the part of appellee, and the finding by the chancellor that the claim was proved by clear and convincing evidence must prevail.
Assignment II is rejected.

*926 III.
The appellant contends (3) that the chancellor erred in holding that Jerry R. Adkins was entitled to recover from the estate based upon quantum meruit and unjust enrichment.
The chancellor found that quantum meruit and unjust enrichment supported appellee's claim. We are of the opinion that the proper basis for the claim is quantum meruit recovery. Even though the theory of unjust enrichment may not apply, the chancellor will be affirmed where he reaches a correct result under the law and facts, though for a wrong reason. Tedford v. Dempsey, 437 So.2d 410 (Miss. 1983). In the instant case, the finding of fact is consistent with the judgment and it will be affirmed. Mitchell v. Rawls, 493 So.2d 361 (Miss. 1986). We proceed to a discussion of the theories of unjust enrichment and quantum meruit.
Quantum meruit recovery is a contract remedy which may be premised either on express or "implied" contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation. Wiltz v. Huff, 264 So.2d 808 (Miss. 1972); Est. of Van Ryan v. McMurtray, 505 So.2d 1015 (Miss. 1987). The measure of recovery in quantum meruit is the reasonable value of the materials or services rendered. Kalavros v. Deposit Guaranty Bank & Trust Co., 248 Miss. 107, 158 So.2d 740 (1963).
Unjust enrichment is an equitable remedy closely associated with "implied contracts" and trusts. In Hans v. Hans, 482 So.2d 1117 (Miss. 1986), the Court said:
The doctrine of unjust enrichment or recovery in quasicontract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
482 So.2d at 1122. And, in Magnolia Federal Savings & Loan v. Randal Craft Realty, 342 So.2d 1308 (Miss. 1977):
[t]he terms "unjust enrichment" and "restitution" are modern designation for the doctrine of "quasi-contracts" and the basis for an action for "unjust enrichment" lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his.
342 So.2d at 1311.
The measure of recovery is a distinction between quantum meruit and unjust enrichment. Recovery in quantum meruit is measured by the reasonable value of materials or services rendered, while recovery in unjust enrichment is that to which the claimant is equitably entitled. See Kalavros v. Deposit Guaranty Bank & Trust Co., supra; and Magnolia Federal Savings & Loan v. Randal Craft Realty, supra.
In the case sub judice, appellee claims as the reasonable value of his services rendered almost seventy-three thousand dollars ($73,000). However, the evidence indicates that the actual benefit received and retained was some thirteen thousand dollars ($13,000), i.e., sale price minus appraised value. Therefore, it is important to apply the proper measure in the instant case. We are of the opinion that quantum meruit recovery applies to express contracts and contracts implied in fact, and, as stated, quantum meruit is the proper measure of recovery. Kovacic, A Proposal to Simplify Quantum Meruit Litigation, 35 Am.U.L.Rev. 547, at 555-56; Magnolia Savings & Loan v. Randal Craft Realty, supra.
Assigned error III is rejected.
The judgment of the lower court is affirmed.
CROSS-APPEAL
THE CHANCELLOR WAS MANIFESTLY WRONG BY FAILING TO AWARD APPELLEE THE ENTIRE AMOUNT OF $72,921.06, AS SET FORTH IN THE AMENDED CLAIM AND WHICH WAS *927 PROVEN BY CLEAR AND CONVINCING EVIDENCE.
We have carefully reviewed the briefs and record with reference to the cross-appeal, and, on the cross-appeal, we apply the same rule as on direct appeal, i.e., that the chancellor was not manifestly wrong in his finding and adjudication of the extent of damages awarded to appellee/cross-appellant.
Therefore, the judgment is affirmed on cross-appeal.
AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.