759 So.2d 521 (2000)
Terry Lee REED and Wife, Cathy Reed, Appellants,
v.
WEATHERS REFRIGERATION AND AIR CONDITIONING, INC., Appellee.
No. 1999-CA-00358-COA.
Court of Appeals of Mississippi.
May 2, 2000.
*522 Paul A. Purnell, West Point, Attorney for Appellants.
Dudley H. Carter, Columbus, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. On December 1, 1995, appellee Weathers Refrigeration and Air Conditioning, Inc. (Weathers) filed suit in Clay County Chancery Court against appellants Terry Lee Reed and Cathy Reed. Weathers was seeking a final decree for an equitable amount of rental for use of a three-ton heat pump provided by Weathers and installed in the Reed's home, as well as payment for the duct work and wiring installed in the home. In the alternative, Weathers asked for a money judgment for the amount of indebtedness, and that an equitable lien be impressed upon the Reed's property. On January 19, 1999, the chancellor awarded Weathers a judgment against the Reeds in the amount of $4,697.76, and a lien against the Reeds's home until such time as that judgment was satisfied. Aggrieved, the Reeds filed this appeal presenting the following issues for our review

*523 I. WHETHER THERE WAS SUBSTANTIAL EVIDENCE TO FIND THAT THE REEDS ACCEPTED DELIVERY OF THE HEAT PUMP.
II. THE CHANCELLOR APPLIED AN ERRONEOUS LEGAL STANDARD WHEN APPLYING THE QUANTUM MERUIT THEORY AS A BASIS FOR WEATHERS' RECOVERY.
¶ 2. Finding the above assignments of error to be without merit, this Court affirms.

STATEMENT OF THE FACTS
¶ 3. In the summer of 1994, the Reeds applied to the Tennessee Valley Authority (TVA) to participate in its Residential Energy Services Program through which TVA and 4-County Electric Power Association (4-County) would finance the purchase of a new heat pump to be installed in the Reed's home. Upon notification that they had been approved to participate in the program, the Reeds were instructed to secure bids from different companies for the installation of the unit. The Reeds obtained bids from Cole Refrigeration and Weathers and then based upon the lower bid, chose Weathers to install the new unit. There was no written contract between the Reeds and Weathers.
¶ 4. Upon accepting the job of installing the new unit, Todd Weathers (Mr. Weathers) first conducted what is called a load calculation to determine what size unit was needed in the Reed's home. Due to the fact that Mr. Reed was financing the unit through the 4-County program, certain specifications had to be followed. After performing the load calculation according to those specifications, Mr. Weathers determined that a three-ton unit was needed. He testified as to such, and that he then discussed the unit size and price with Mr. Reed over the telephone prior to its installation. Mr. Weathers further testified that he specifically told Mr. Reed the unit that was to be installed was three-tons. Mr. Weathers asserts that Mr. Reed then told him to do the job. Mr. Weathers stated that after the unit had been installed, all the paperwork was sent to 4-County to order an inspection of the installation and unit. Once the work was successfully inspected, Mr. Reed refused to sign the billing and financing information when it was presented to him. Mr. Reed told him that he would not sign the papers because he wanted a three and a half-ton unit, not a three-ton unit. Mr. Weathers contends that Mr. Reed never informed him of that, and without Mr. Reed's signature, Weathers does not get paid for the unit or the labor.
¶ 5. David Harrington, an employee of 4-County testified that he received two load calculations, one from Cole Refrigeration and the other from Weathers. As stated above, the bid from Weathers was lower. Harrington testified that based on the load studies prepared by both companies, in choosing Weathers to do the job, TVA would finance a York three-ton unit for the Reeds. He clarified by stating that for that particular brand of unit, TVA would only finance a three-ton unit, not a three and a half-ton unit. He also contended that the Reeds might have been able to have a three and a half-ton unit financed through the program if it was another brand.
¶ 6. Frank Fortner was the Weathers employee who installed the unit in the Reed's home in August 1994. Fortner testified that after he had performed part of the work required to install the unit, but prior to the actual installation of the unit itself, he was discussing facts about the unit with Mr. Reed. He testified that when he mentioned to Mr. Reed that the unit was three-tons, Mr. Reed asserted that the unit was supposed to be three and a halftons. At that time, Mr. Reed called Weathers to discuss the matter. Fortner contends that when Mr. Reed came back outside, with the knowledge that the unit was a York three-ton unit, Mr. Reed told him to go ahead and install the unit. The *524 particular unit has been in use since its installation in August 1994.
¶ 7. Mr. Reed testified that he initially discussed the matter over the telephone with Weathers, and that there was no written contract. He further testified that when he asked Travis Weathers, deceased, if the price he was quoted was for a three and a half-ton unit, Travis Weathers told him it was. Mr. Reed contends that the unit was partially installed when he was informed it was a three-ton unit. He testified that when he conveyed his dissatisfaction to Weathers, he told the company they could come get the unit, as long as they reinstalled his old unit. Weathers informed him that could not be done, due to the fact that Mr. Reed's old unit had already been sent to the junk yard. Mr. Reed testified that no one told him prior to installation that he could not have a three and a half-ton unit installed. On cross-examination, Mr. Reed was questioned about his prior deposition on the matter. In his deposition he stated that TVA had informed him that only a unit deemed necessary by the load report could be installed in his home. Mr. Reed also stated in his deposition that he knew TVA would only finance a unit deemed necessary, and not a larger one. Mr. Reed testified that Weathers, after discussing the matter, told him they could install a three and a half-ton unit, but they could not guarantee TVA would finance it. Mr. Reed stated that he was not going to pay for the unit because the installation of a three-ton unit was not the original agreement.

STANDARD OF REVIEW
¶ 8. It is well settled law that "on appellate review, a chancellor's findings of fact will not be disturbed if substantial evidence supports those factual findings." Hunt v. Coker, 741 So.2d 1011, 1014(¶ 6) (Miss.1999) (citing Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995)). Also, "this Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). Described another way, this Court is "required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). Lastly, these rules apply to factual situations and determinations, not questions of law.

LAW AND ANALYSIS

I. WAS THERE SUBSTANTIAL EVIDENCE TO FIND THAT THE REEDS ACCEPTED DELIVERY OF THE HEAT PUMP?
¶ 9. According to the standard of review as stated above, the chancellor's findings of fact must have been based on substantial evidence in order for this Court to affirm those findings. Appellant Reed contends that the chancellor erred in finding that the Reeds had accepted delivery of the heat pump, due to a lack of substantial evidence. Therefore, they argue that this Court must reverse the chancellor's finding. We do not agree.
¶ 10. In cases such as this one, where the majority of the evidence is divulged strictly from the testimonies of various witnesses, it is the testimonies that must be weighed to determine whether or not there is substantial evidence to support a finding. It is settled law that "the chancellor is the judge of the weight and worth of the testimony and the court's decree based upon the evidence will not be disturbed unless manifestly wrong." Dubois v. Dubois, 275 So.2d 100, 101 (Miss.1973). Therefore, when the chancellor is confronted with conflicting testimonies, he determines which has more credibility. "Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong." Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978).
*525 ¶ 11. In the present opinion, the chancellor stated that prior to making findings of fact that were determinative of the outcome, she judged the credibility of each witness and decided the weight to be given to all the testimony. During this trial, the chancellor heard conflicting testimonies concerning the installation of the three-ton unit and Mr. Reed's knowledge of the size prior to the installation, facts relevant to determine whether or not Mr. Reed accepted the unit. The testimony of Mr. Reed and the testimony of Frank Fortner, the man who installed the unit, tell two different stories. The chancellor, after weighing both, held that Frank Fortner's testimony had more credibility, therefore finding that Mr. Reed told him to install the unit after Mr. Reed knew that it was a three-ton unit and not a three and a half-ton unit. The chancellor therefore held that this evidence, coupled with the fact that the Reeds have used the unit since August 1994, proved that Mr. Reed accepted the unit. The chancellor acted within her discretion, and this Court affirms the chancellor's findings, as they were supported by substantial evidence.

II. DID THE CHANCELLOR APPLY AN ERRONEOUS LEGAL STANDARD WHEN APPLYING THE QUANTUM MERUIT THEORY AS A BASIS FOR WEATHERS' RECOVERY?
¶ 12. Appellant Reed asserts that the chancellor erroneously granted Weathers recovery under the quantum meruit theory. The Reeds further contend that the application of this contract remedy amounts to reversible error. This Court does not agree.
¶ 13. Black's Law Dictionary states the following about quantum meruit: "As equitable doctrine, based on the concept that no one who benefits by the labor and materials of another should be unjustly enriched thereby; under those circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor." Black's Law Dictionary 1243 (6th ed.1990) (emphasis added). In her ruling, the chancellor found that "the Defendants cannot in equity use the heat pump system and the duct work, as well as benefit from Weathers's labor used to install the unit, without paying for them and that the Plaintiff is entitled to recovery under the theory of quantum meruit." (TR 47) (emphasis added). The chancellor's findings based on equitable principles were directly on point with the equitable doctrine of quantum meruit.
¶ 14. In addition, Black's Law Dictionary has laid out the essential elements of recovery under quantum meruit:
(1) valuable services were rendered or materials furnished, (2) for person sought to be charged, (3) which services and materials were accepted by person sought to be charged, used and enjoyed by him, and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.
Id. This definition is in line with case law cited by the chancellor in her ruling. The case of Estate of Johnson v. Adkins, 513 So.2d 922 (Miss.1987), as quoted by the chancellor, states that "quantum meruit recovery is a contract remedy which may be premised either on express or `implied' contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation." Id. at 926 (citing Wiltz v. Huff, 264 So.2d 808 (Miss.1972); Estate of Van Ryan v. McMurtray, 505 So.2d 1015 (Miss.1987)).
¶ 15. In the present case, after reviewing and weighing all the evidence before her, the chancellor found that each one of the above essential elements of recovery under quantum meruit were met. In fact, only the third and fourth elements were ever really at issue. However, as settled in the above assignment of *526 error, the chancellor justifiably concluded that the unit was accepted by Mr. Reed and used by the Reeds since 1994; hence, Weathers rightfully expected payment for the unit and labor. For these reasons, the chancellor did not wrongfully apply the quantum meruit theory as a basis for recovery.
¶ 16. Even if this Court were to concede that another theory of recovery were applicable, the chancellor's application of quantum meruit as the basis for recovery does not constitute reversible error. In the case of Williams v. Mason, 556 So.2d 1045 (Miss.1990), the supreme court stated: "The Chancery Court held the contract enforceable but granted a remedy of specific performance. We hold, instead, that Mason's remedies, if any, were quantum meruit recovery...." Id. at 1051. The court continued at that point of the opinion stating that "the case thus approaches the principle that, where the court below has reached the right result for the wrong reason, we will not intervene on appeal." Id. "The parties have litigated, and the Chancery Court has decided, matters requisite to the remedies legally available to Mason, and there is no reason those matters ought be retried." Id.
¶ 17. This concept involving the lower court reaching a correct result but for the wrong reasons, and the effect it has on the appeals process, has been addressed in other cases as well. In Johnson v. Adkins, the chancellor found that both quantum meruit and unjust enrichment supported the appellee's claim. However, the supreme court held that only quantum meruit recovery applied. The court concluded that although they found that another theory besides unjust enrichment applied, "the chancellor will be affirmed where he reaches a correct result under the law and facts, though for a wrong reason." Johnson, 513 So.2d at 926 (citing Tedford v. Dempsey, 437 So.2d 410, 418 (Miss.1983)). This principle was also discussed in Patel v. Telerent Leasing Corp., 574 So.2d 3 (Miss.1990). In that case, the court expanded by holding that "if the judgment of such court can be sustained for any reason, it must be affirmed, and even though the trial judge based it upon the wrong legal reason." Id. at 6. This principle is applicable to our present issue. As stated, even if this Court concluded that another recovery theory was more suitable, we would not reverse the chancellor's findings based upon this reason.
¶ 18. This Court concludes that the chancellor did not commit reversible error in finding that Mr. Reed accepted the unit from Weathers, or in applying the theory of quantum meruit as the basis for Weather's recovery. The assignments of error are without merit. Accordingly, this Court affirms.
¶ 19. THE JUDGMENT OF THE CLAY COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.