# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01898-SCT

*IN THE MATTER OF THE ESTATE*
*OF GEORGE FITZNER, DECEASED:*
*OLIVER L. PHILLIPS*

*v.*

*JULIE FITZNER JUROTICH, ADMINISTRATRIX,*
*C.T.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/5/2001 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | DAVID L. SANDERS |
| | JEFFREY JOHNSON TURNAGE |
| ATTORNEYS FOR APPELLEE: | JAMES W. CRAIG |
| | J. RANDOLPH LIPSCOMB |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 01/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     This case involves an appeal from a judgment denying a probated claim filed by

Oliver L. Phillips, one of the partners in a limited partnership, against the Estate of George E.

Fitzner, the other partner.  The chancellor found that advances made by Phillips for the

benefit of Fitzner were subject to a written memorandum agreement which restricted Phillips'

recovery to assets from the partnership. The chancellor further found that the parol evidence rule barred evidence of oral agreements made prior to the execution of the written agreement and that the statute of frauds barred evidence of alleged oral modifications made after the execution of the written agreement. We affirm.

## FACTS

¶2. In 1995, Oliver L. Phillips and George E. Fitzner formed a Mississippi limited partnership, Plantation Pointe, L.P., to operate a retirement home in Columbus, Mississippi. Each owned fifty percent of the partnership, and each made equal contributions to the business until 1996, when Phillips' contributions began to exceed those made by Fitzner. According to Phillips, Fitzner, who was having cash flow problems, orally promised to repay Phillips fifty percent of his contributions plus interest. As the unequal contribution pattern continued, however, Phillips became concerned. He repeatedly asked Fitzner to reduce the promise to pay to writing, but Fitzner always put him off, saying that he promised to pay Phillips back with interest. In 1997, Phillips produced, and Fitzner signed, a memorandum agreement, which provided as follows:

> These parties are the principal partners in Plantation Pointe, L.P. (the "Business") and desire to reduce their understanding with respect to financial advances to writing. The Business has considerable expenses and has needed and continues to need infusions of cash. Phillips has been and is in a position to inject cash into the business to a greater extent than Fitzner is able and willing to do. It is agreed that all cash advances made by Phillips to the business in excess of equal advances made by Fitzner shall accrue interest from the date of each such advance at the rate of one and one-half per cent (1½%) above New York prime, compounded monthly. In the event of the sale of all or a part of the business or the ability of the business to pay out income to its partners, Phillips will be

2

repaid his disproportionate advances together with all such accrued interest prior to any other disbursements from the business to any partner.

¶3. Plantation Pointe's tax returns show that Phillips' ownership percentage in Plantation Pointe gradually rose from 50% in 1995 to 92.67% in 1999. Plantation Pointe's books credited every dollar Phillips contributed as a credit to Phillips' capital account.

¶4. Fitzner died in 1999, and estate proceedings were begun. Phillips probated a claim in the amount of $1,527.882.31 against the Estate based on the written memorandum agreement. The Estate filed a motion to disallow Phillips' claim, which the chancellor granted, finding, in effect, that Phillips' claim was against Plantation Pointe, not the Estate:

> The [memorandum] agreement is not ambiguous. No evidentiary hearing is necessary to take parol evidence in order to interpret the agreement. The agreement between Phillips and Fitzner says that they "desire to reduce their understanding with respect to financial advances to writing." Therefore there is no need nor right to vary or add to the written agreement as the parties intended the written agreement to be complete and whole, the integration of their agreement to writing.

¶5. The chancellor[1] allowed Phillips to amend to add a claim that there was an oral contract between Phillips and Fitzner pertaining to the cash advances. The chancellor held:

> [A] claim is sufficient if it indicates the nature and extent of the claim, and it may be amended if the amendment does not substantially change the original claim or introduce a new or different claim. . . . The written agreement does not establish an enforceable claim against the estate, and it may not be supplemented by oral agreements. The written agreement

---

[1]Chancellor Robert L. Lancaster ruled on all matters until he recused himself just before the evidentiary hearing on the motion to disallow Phillips' claim. At that point, the case was assigned to Chancellor Dorothy Winston Colom.

however may be modified by a subsequent oral agreement unless prohibited by the statute of frauds.

The amended claim filed by Phillips stated as follows:

> To the extent the written agreement Dated December 15, 1997 was an attempt to reduce their agreement to writing, Fitzner and Phillips had a separate oral agreement that was never reduced to writing. Alternatively, Fitzner and Phillips orally modified their agreement of December 15, 1997 when Fitzner on many occasions orally promised Phillips if Phillips would infuse more of his personal cash into the business, Fitzner would personally repay Phillips for all unequal cash advances ever made by Phillips to the business with interest compounded monthly at a rate of 1½ percent above New York prime.

The chancellor ruled that Phillips failed to prove by clear and convincing evidence that an oral contract was ever made between Phillips and Fitzner. Phillips appeals.

## DISCUSSION

### I.      WHETHER THE MEMORANDUM AGREEMENT WAS AMBIGUOUS.

¶6.     "In contract construction cases a court's focus is upon the objective fact -- the language of the contract. [A reviewing court] is concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001); *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989). Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner*, 799 So. 2d at 32; *Cherry v. Anthony*, 501 So. 2d 416, 419 (Miss. 1987).

4

¶7. Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Parkerson v. Smith*, 817 So. 2d 529, 532 (Miss. 2002); *Miss. State Hwy. Comm'n v. Patterson Enters., Ltd.*, 627 So. 2d 261, 263 (Miss. 1993). The standard of review for questions of law is de novo. *Parkerson*, 817 So. 2d at 532; *Starcher v. Byrne*, 687 So. 2d 737, 739 (Miss. 1997).

¶8. A reviewing court should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue. *Cooper v. Crabb*, 587 So. 2d 236, 239 & 241 (Miss. 1991). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. *McKee v. McKee*, 568 So. 2d 262, 266 (Miss. 1990). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42-43 (Miss. 1992).

¶9. The chancellor found as follows:

> The agreement between Phillips and Fitzner says that they "desire to reduce their understanding with respect to financial advances to writing." Therefore there is no need nor right to vary or add to the written agreement as the parties intended the written agreement to be complete and whole, the integration of their agreement to writing. Prior negotiations and agreements were merged into the written agreement. The advances to be

5

made by Phillips are to be made to the business, not to Fitzner. Nowhere in the agreement does Fitzner agree to repay the advances made by Phillips to the business. What Fitzner does agree is that the advances shall be repaid by the business "prior to any other disbursements from the business." Fitzner also does agree to the interest rate that the business shall pay Phillips for his loans to the business.. Nowhere within the four corners of the agreement is there any language which can be interpreted as an agreement by Fitzner to repay Phillips for any advances which Phillips chooses to make to the business, including any disproportionate advances that Phillips may have made to the business in the past. Nowhere in the written agreement does Fitzner agree to be personally liable for principal and interest on any prior advances made by Phillips to the business. This written agreement would have been the logical and reasonable time and place for Fitzner to agree in writing to be liable personally for both previous and future advances by Phillips to the business and he did not. This written agreement was also the logical and reasonable manner in which Fitzner and Phillips would have memorialized any prior agreement between them that any prior advances by Phillips to the business were actually loans to Fitzner and advances by him to the business. No such memorialization was made notwithstanding the parties['] statement that the purpose of the writing was to reduce to writing their agreement on advances to the business. The written agreement evidences that Fitzner would not at that time advance more money to the business but if Phillips chose to do so, Phillips would be repaid by the business, as a creditor, any disproportionate advances in preference to any claims of Fitzner, as a partner.

¶10. The chancellor did not err in finding that the memorandum agreement was unambiguous. A contract is sufficiently definite if it contains matters which will enable the court under proper rules of construction to ascertain its terms. *Duke v. Whatley*, 580 So. 2d 1267, 1274 (Miss. 1991). The chancellor obviously spent a great deal of time analyzing the document and determining the meaning of its provisions. The chancellor correctly found that the document does not contain any provision making Fitzner personally liable for repayment

6

of Phillips' advances to the business. The document plainly states that Phillips will be repaid first for his disproportionate advances from any proceeds from the sale of the business. Phillips' advances are recognized, and a process was established whereby Phillips would be repaid. Therefore, we conclude that the memorandum agreement was not ambiguous.

## II. WHETHER THE AMENDED CLAIM IMPERMISSIBLY MODIFIED THE CHARACTER OF THE ORIGINAL CLAIM.

¶11. The chancellor allowed Phillips to amend his claim to show that the memorandum agreement may have been modified by a subsequent oral agreement, unless prohibited by the statute of frauds. The Estate argues that the amended claim modified the original claim and Phillips should not have been allowed to amend. While a claimant may amend his claim against an estate,

> [w]here the amendment increases the amount of the claim, sets up a new cause of action, and materially changes the basis of the claim, it is not allowable. It is permissible only if it does not amount to a new claim, but is merely an improvement or perfection of one presented in time but lacking certain elements necessary to express its full merits.

34 C.J.S. *Executors and Administrators* § 417 (quoted in ***Cent. Optical Merch. Co. v. Lowe's Estate***, 249 Miss. 61, 160 So. 2d 673, 678 (1964)).

¶12. Phillips' original claim was based upon the memorandum agreement. As the chancellor found, "Phillips did not include with his probated claim any signed 'statement of the claim in writing' relying instead upon the subject written agreement and an itemized but unsigned account which he attached to his sworn claim." The amended claim stated as follows:

7

To the extent the written agreement Dated December 15, 1997 was an attempt to reduce their agreement to writing, Fitzner and Phillips had a separate oral agreement that was never reduced to writing. Alternatively, Fitzner and Phillips orally modified their agreement of December 15, 1997, when Fitzner on many occasions orally promised Phillips if Phillips would infuse more of his personal cash into the business, Fitzner would personally repay Phillips for all unequal cash advances ever made by Phillips to the business with interest compounded monthly at a rate of 1½ percent above New York prime.

¶13. The amendment does not substantially modify the character of the original claim. While the original claim made no mention of any oral modifications, and the memorandum agreement was merely attached as an exhibit to show the existence of the debt, the amount allegedly due to Phillips remained the same and the basis of the claim (the disproportionate cash advances) was not modified.

### III. WHETHER THE PAROL EVIDENCE RULE APPLIED TO EXCLUDE EVIDENCE OF ORAL AGREEMENTS MADE PRIOR TO THE EXECUTION OF THE MEMORANDUM AGREEMENT.

¶14. At the evidentiary hearing, Phillips sought to call witnesses who would testify that, on several occasions before the memorandum agreement was executed, Fitzner had orally promised to repay Phillips unconditionally, regardless of sale or profitability. Because the first chancellor held that the agreement was unambiguous, the second chancellor did not allow Phillips to put these witnesses on the stand.

¶15. Phillips claims that the chancellor's ruling was contrary to both the evidence and the law, contending that the parol evidence rule provides that prior and contemporaneous negotiations are merged only into the writings that are adopted by the parties as the final and

complete expression of their agreement. He states that it was improper for the chancellor to rule that there was a merger of prior oral agreements and the written agreement until the chancellor heard all the testimony and understood the circumstances surrounding the execution of the writing. He claims that nothing in the agreement ever indicated that it was a final and complete expression of all of their other agreements

¶16. Under the parol evidence rule, where a contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract. *Turner*, 799 So. 2d at 32; *Heritage Cablevision v. New Albany Elec. Power Sys.*, 646 So. 2d 1305, 1312 (Miss. 1994). Parol evidence will not be received to vary or alter the terms of a written agreement that is intended to express the entire agreement of the parties on the subject matter at hand. *Turner*, 799 So. 2d at 32; *Grenada Auto Co. v. Waldrop*, 188 Miss. 468, 195 So. 491, 492 (1940).

¶17. Although parol evidence which contradicts, varies, alters, adds to, or detracts from the written agreement is not admissible, this bedrock rule "is subject to many exceptions and is said to be very flexible." *Turner,* 799 So. 2d at 32; *Byrd v. Rees*, 251 Miss. 876, 882, 171 So. 2d 864, 867 (1965). "Parol evidence of the intention of the parties may be received to clear up an ambiguity by reason of which, such intention is not definitely expressed." *Id*.

¶18. Because the chancellor correctly found that the memorandum agreement was unambiguous, the parol evidence rule excludes from consideration Phillips' proposed evidence of oral agreements made prior to the execution of the memorandum agreement. Parol evidence may be considered only if the contract is unclear or ambiguous and if the court is unable to translate a clear understanding of the parties' intent. *Pursue Energy*

*Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990). Here, the memorandum agreement's terms are crystal clear. Therefore, the chancellor properly enforced the parol evidence rule by excluding the proffered evidence of oral agreements made prior to the execution of the memorandum agreement.

### IV. WHETHER THE PAROL EVIDENCE RULE SHOULD HAVE BEEN APPLIED TO ORAL AGREEMENTS MADE SUBSEQUENT TO THE EXECUTION OF THE MEMORANDUM AGREEMENT.

¶19. The chancellor did not reach this issue because other rulings discussed below mooted it, but, on appeal, Phillips correctly states that the parol evidence rule should not be applied to evidence of subsequent oral agreements:

> Any contract, however, made or evidenced, can be discharged or modified by subsequent agreement of the parties. . . . The existence and the terms of this modifying or discharging agreement can be proved by the same kinds of evidence that are admissible to prove any other kind of contract. . . . But after these issues have been determined and the court finds, as a fact, the making and the terms of the modifying or discharging agreement, we are no longer interested in the terms of the antecedent contract for purposes of enforcement of them, in so far as those terms have been nullified by the new agreement.

3 A. Corbin, *Contracts* § 574, at 374-75 (1960) (quoted in *Kelso v. McGowan*, 604 So. 2d 726, 731 (Miss. 1992)).

### V. WHETHER PHILLIPS' CLAIM AS TO SUBSEQUENT ORAL MODIFICATIONS WAS BARRED BY THE STATUTE OF FRAUDS.

¶20.    The chancellor held that Phillips' claim relating to any oral modifications made after the execution of the memorandum agreement was barred by the statute of frauds[2] and the more specific statute of frauds which relates to limited partnerships.[3]  The chancellor held that the memorandum agreement unambiguously established the liability of the partnership, i.e., Plantation Pointe, for any cash advances made by Phillips, and that the partnership was specifically distinguished from Fitzner personally.

¶21.    Under the Plantation Pointe limited partnership agreement, neither of the partners (Phillips nor Fitzner) were liable to third parties for debts of the partnership.  As a limited partner, Fitzner had no liability or duty to make capital contributions to the partnership.  "A promise by a limited partner to contribute to the limited partnership is not enforceable unless set out in a writing signed by the limited partner."  Miss. Code Ann. § 79-14-502(a) (Rev. 2001).  The only writing with respect to partners' contributions to the partnership was the

---

[2]Miss. Code Ann. § 15-3-1 (Rev. 1995) provides in pertinent as follows:

> An action shall not be brought whereby to charge a defendant or other party:
>
> (a)    upon any special promise to answer for the debt or default or miscarriage of another person;
>
> * * *
>
> unless in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

[3]A promise by a limited partner to contribute to the limited partnership is not enforceable unless it is set out in a writing signed by the limited partner.  Miss. Code Ann. § 79-14-502(a) (Rev. 2001).

memorandum agreement which specifically stated that Phillips would be paid from the proceeds of the sale of Plantation Pointe. Personal liability for the debt was not assumed by Fitzner. Because Fitzner was not personally liable to repay Phillips, any alleged oral promise made by Fitzner would be "a special promise to answer for the debt or default or miscarriage of another person" and therefore squarely within the prohibitions of Miss. Code Ann. § 15-3-1(a).

¶22. A promise to pay another's debt is a collateral obligation, as opposed to an original obligation:

> The question to be kept in mind always is whether or not the person making the promise is entering into an original or collateral obligation. If it be the former, the Statute of Frauds does not apply; if the latter, it does.
>
> * * *
>
> If the party to whom a consideration moves becomes personally liable for the payment of the debt, the promise of any other person to pay it, though the promise be made at the same time, and upon the same consideration, is a collateral undertaking to pay the debt of another, and within the statute. . . .

*Allen v. Smith & Brand*, 160 Miss. 303, 133 So. 599, 601-02 (1931). If Fitzner promised Phillips to repay Phillips for his unequal contributions to Plantation Pointe, the promise was a collateral undertaking to pay Phillips' debt, and therefore controlled by the statute of frauds. Phillips made his contributions to Plantation Pointe, not to Fitzner. Phillips himself treated the cash injections as capital contributions as evidenced by Plantation Pointe's tax returns. Phillips advanced money to the partnership and received credit on his capital account from

the partnership. The only writing in evidence states that the partnership is responsible for the repayment of the contributions. Thus, this issue is without merit.

## VI. WHETHER EQUITABLE ESTOPPEL PRECLUDES THE APPLICATION OF THE STATUTE OF FRAUDS.

¶23. "[T]he doctrine of equitable estoppel may be invoked to preclude a party to a contract from asserting the unenforceability of a contract by reason of the fact that it is not in writing as required by the statute of frauds." *Sanders v. Dantzler*, 375 So. 2d 774, 776 (Miss. 1979). "Where one has acted to his detriment solely in reliance on an oral agreement, an estoppel may be raised to defeat the defense of the statute of frauds." *Id.* Phillips claims that he detrimentally relied upon Fitzner's promise to repay by infusing "over $3,000,000 into Plantation Pointe, and that equitable estoppel should be applied."

¶24. However, Phillips did not act to his detriment – for every cash contribution, he received a proportionate increase in the capital of Plantation Pointe. This claim is without merit.

## VII.  WHETHER THE ORAL PROMISES SHOULD BE ENFORCED IN QUANTUM MERUIT.

¶25.  Quantum meruit recovery is a contract remedy which may be premised either on express or "implied" contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation.  *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987); *Estate of Van Ryan v. McMurtray*, 505 So. 2d 1015 (Miss. 1987); *Wiltz v. Huff*, 264 So. 2d 808, 810-11 (Miss. 1972).  The essential elements of recovery under quantum meruit are (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.  *Reed v. Weathers Refrigeration & Air Conditioning, Inc.*, 759 So. 2d 521, 525 (Miss. Ct. App. 2000) (quoting *Black's Law Dictionary* 1243 (6th ed. 1990)).  The doctrine of quantum meruit

> applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Hans v. Hans*, 482 So. 2d 1117, 1122 (Miss. 1986).

¶26.  Quantum meruit is not applicable to this case because the Estate was not in possession of Phillips' money.  Phillips' money was given to Plantation Pointe, not to Fitzner.  Phillips'

14

quantum meruit claim also fails because the cash that Phillips contributed to Plantation Pointe was not used and enjoyed by Fitzner. This claim is without merit.

CONCLUSION

¶27. We find no error in the chancellor's findings that the memorandum agreement was unambiguous, that the parol evidence rule applied to bar evidence of any oral agreements made prior to the execution of the memorandum agreement, and that evidence of any subsequent oral modifications to the memorandum agreement was barred by the statute of frauds. Therefore, we affirm the judgment denying the claim of Oliver L. Phillips against the Estate of George E. Fitzner.

¶28. **AFFIRMED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**